**2023-14209     DT Total Pages: 10**

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## DEED OF TRUST

### Terms

**Date:**          July 30, 2023

**Grantor:**     Greenville Construction, LLC

**Grantor's Mailing Address:**          5907 Wesley St., Ste. 102
Greenville, TX 75402
Hunt County, Texas

**Trustee:**     Brent A. Money

**Trustee's Mailing Address:**          2606 Lee St.
Greenville, TX 75401
Hunt County, Texas

**Lender:**     Zinnow Investments, LLC

**Lender's Mailing Address:**          806 Coleman Ave Unit 9
Menlo Park, CA 94025

**Obligation**

**Note**

**Date**:  July 30, 2023

**Original Principal Amount**:

Five Hundred Thousand and 0/100's Dollars pursuant to a Promissory Note of even date executed by Grantor and payable to the order of Lender, the terms of which are incorporated as if fully described herein.

**Borrower**:    Greenville Construction, LLC

**Lender**:    Zinnow Investments, LLC

**Maturity date**:          January 30, 2024

---

DEED OF TRUST                                                                                    PAGE 1

**Terms of Payment**:   As provided in the note.

**Other Debt**:   None.

**Property (including any improvements):**

All those certain lots, tracts or parcels of land  being  more particularly described in the attached **Exhibit A**.

**Prior Lien:**   None.

**Other Exceptions to Conveyance and Warranty:**

For value received and to secure payment of the Obligation, Grantor conveys the Property to Trustee in trust.   Grantor warrants and agrees to defend the title to the Property, subject to the Other Exceptions to Conveyance and Warranty.   On payment of the Obligation and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense.

**Clauses and Covenants**

**A.     Grantor's Obligations**

Grantor agrees to-

1.     keep the Property in good repair and condition;

2.     pay all taxes and assessments on the Property before delinquency;

3.     defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

4.     maintain all insurance coverages with respect to the Property, revenues generated by the Property, and operations on the Property that Lender reasonably requires ("Required Insurance Coverages"), issued by insurers and written on policy forms acceptable to Lender, and deliver evidence of the Required Insurance Coverages in a form acceptable to Lender at least ten days before the expiration of the Required Insurance Coverages;

5.     obey all laws, ordinances, and restrictive covenants applicable to the Property;

6.     keep any buildings occupied as required by the Required Insurance Coverages;

7.     if the lien of this deed of trust is not a first lien, pay or cause to be paid all prior lien notes and abide by or cause to be abided by all prior lien instruments; and

---

8.      notify Lender of any change of address.

## B.      Lender's Rights

1.      Lender or Lender's mortgage servicer may appoint in writing a substitute trustee, succeeding to all rights and responsibilities of Trustee.

2.      If the proceeds of the Obligation are used to pay any debt secured by prior liens, Lender are subrogated to all the rights and liens of the holders of any debt so paid.

3.      Lender may apply any proceeds received under the property insurance policies covering the Property either to reduce the Obligation or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determine that repairs to the improvements are economically feasible, Lender will make the property insurance proceeds available to Grantor for repairs.

4.      Notwithstanding the terms of the Note to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor with respect to the Obligation or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender with respect to the Obligation, to be applied to late charges, principal, or interest in the order Lender in their discretion determine.

5.      If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

6.      If there is a default on the Obligation or if Grantor fails to perform any of Grantor's obligations and the default continues after any required notice of the default and the time allowed to cure, Lender may-

     a.      declare the unpaid principal balance and earned interest on the Obligation immediately due;

     b.      direct Trustee to foreclose this lien, in which case Lender or Lender's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

     c.      purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

7.      Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

---

**DEED OF TRUST**                                           

## C.   Trustee's Rights and Duties

If directed by Lender to foreclose this lien, Trustee will-

1.   either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

2.   sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to the Prior Lien and to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

3.   from the proceeds of the sale, pay, in this order-

a.   expenses of foreclosure, including a reasonable commission to Trustee;

b.   to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

c.   any amounts required by law to be paid before payment to Grantor; and

d.   to Grantor, any balance; and

4.   be indemnified, held harmless, and defended by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

## D.   General Provisions

1.   If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser.   If Grantor fails to do so, Grantor will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.   Recitals in any trustee's deed conveying the Property will be presumed to be true.

3.   Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.   This lien will remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

5.   If any portion of the Obligation cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

6.   Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property.   After deducting any

expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Obligation. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

7.      Grantor assigns to Lender absolutely, not only as collateral, all present and future rent and other income and receipts from the Property. Grantor warrants the validity and enforceability of the assignment. Grantor may as Lender's licensee collect rent and other income and receipts as long as Grantor is not in default with respect to the Obligation or this deed of trust. Grantor will apply all rent and other income and receipts to payment of the Obligation and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due with respect to the Obligation and deed of trust, Grantor may retain the excess. If Grantor defaults in payment of the Obligation or performance of this deed of trust, Lender may terminate Grantor's license to collect rent and other income and then as Grantor's agent may rent the Property and collect all rent and other income and receipts. Lender neither have nor assume any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Lender's rights and remedies and then to Grantor's obligations with respect to the Obligation and this deed of trust in the order determined by Lender. Lender are not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies. If Grantor becomes a voluntary or involuntary debtor in bankruptcy, Lender's filing a proof of claim in bankruptcy will be deemed equivalent to the appointment of a receiver under Texas law.

8.      Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

9.      In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

10.      When the context requires, singular nouns and pronouns include the plural.

11.      The term *Note* includes all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust.

12.      Grantor and Lender expressly agree that the *Note* is "non-escrow" and that all payments for taxes, insurance, and other assessments be made by Grantor outside of the debt obligations under the *Note* directly to the Tax Assessor Collector, Hazard Insurer, or other

assessment payee.

13.     If the Property is transferred by foreclosure, the transferee will acquire title to all insurance policies on the Property, including all paid but unearned premiums.

14.     GRANTOR MAY FURNISH ANY INSURANCE REQUIRED BY THIS DEED OF TRUST EITHER THROUGH EXISTING POLICIES OWNED OR CONTROLLED BY GRANTOR OR THROUGH EQUIVALENT COVERAGE FROM ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TEXAS.

15.     If Grantor transfers any part of the Property without Lender's prior written consent, Lender may declare the Obligation immediately payable and invoke any remedies provided in this deed of trust for default.  If the Property is residential real property containing fewer than five dwelling units or a residential manufactured home, this provision does not apply to (a) a subordinate lien or encumbrance that does not transfer rights of occupancy of the Property; (b) creation of a purchase-money security interest for household appliances; (c) transfer by devise, descent, or operation of law on the death of a co-Grantor; (d) grant of a leasehold interest of three years or less without an option to purchase; (e) transfer to a spouse or children of Grantor or between co-Grantors; (f) transfer to a relative of Grantor on Grantor's death; (g) a transfer resulting from a decree of a dissolution of marriage, a legal separation agreement, or an incidental property settlement agreement by which the spouse of Grantor becomes an owner of the Property; or (h) transfer to an inter vivos trust in which Grantor is and remains a beneficiary and occupant of the Property.

16.     This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

17.     If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

18.     Grantor and each surety, endorser, and guarantor of the Obligation waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

19.     Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if this deed of trust is placed in the hands of an attorney for enforcement.

20.     If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

21.     The term *Lender* includes any mortgage servicer for Lender.

[SIGNATURE PAGE TO FOLLOW]

**GREENVILLE CONSTRUCTION, LLC**

By: _____

Larry Ellis, Chief Operating Officer

STATE OF TEXAS              )
                           )
COUNTY OF HUNT             )

    This instrument was acknowledged before me on _July 25_ 2023, by Larry Ellis on the behalf of Greenville Construction, LLC, as the Chief Operating Officer thereof,

ELYSSA ANN HARE
Notary Public, State of Texas
Comm. Expires 10-30-2023
Notary ID 132232868

_____
Notary Public, State of Texas

---

## EXHIBIT A

Lot 1 of the Scott Ellis Homestead, according to the map or plat thereof recorded in Cabinet I, Slide 521 of the map and or plat records of Hunt County, Texas. A copy of the plat is attached hereto. Lot 1 consists of 3.834 acres and a single family residential home, commonly known as 505 Traders Road, Greenville, Texas.

2021-22425 PLAT Total Pages: 1



## OWNER'S CERTIFICATE

WHEREAS GREENVILLE CONSTRUCTION, LLC, is the owner of a tract or parcel of land situated within the City of Greenville, Hunt County, Texas, and being more particularly described as follows:

### LEGAL DESCRIPTION

BEING a tract or parcel of land situated in Hunt County, Texas, being a part of the M. McDonald Survey, Abstract No. 738, being part of a 22.060 acre tract of land as described in a General Warranty Deed from ATGG Holdings, L.P. to Greenville Construction, LLC as recorded in/under Document No. 2019-11382 of the Official Public Records of Hunt County, Texas and being further described as follows:

BEGINNING at a 1/2 inch iron rod found for a corner on the south line of Traders Road, said Point of Beginning being at the existing northwest corner of Lot 1 of the ELLIS HOMESTEAD, an addition to City of Greenville, Hunt County, Texas, as recorded in Cabinet H on Slides 193-194 of the Plat Record of Hunt County, Texas;
THENCE S 06°31'16" E along a fence and the west line of Lot 1, a distance of 202.96 feet to a 1/2 inch iron rod found for a corner at the southwest corner of Lot 1;
THENCE S 89°37'51" E along the south line of Lot 1, a distance of 173.64 feet to a 1/2 inch iron rod found for a corner at the southeast corner of Lot 1 on the west line of Cedar Creek Lane;
THENCE S 01°45'18" E along the east line of said 22.060 acre tract and the west line of Cedar Creek Lane, a distance of 12.60 feet to a 1/2 inch iron rod found for a corner;
THENCE S 89°22'32" W a distance of 180.04 feet to a 1/2 inch iron rod found for a corner;
THENCE S 01°45'18" E a distance of 110.02 feet to a 1/2 inch iron rod found for a corner;
THENCE S 89°22'32" W a distance of 377.80 feet to a 1/2 inch iron rod found for a corner;
THENCE S 88°58'59" W a distance of 238.58 feet to a 1/2 inch iron rod found for a corner;
THENCE S 88°59'29" W a distance of 102.17 feet to a 1/2 inch iron rod found for a corner;
THENCE S 88°59'30" W a distance of 392.66 feet to a 1/2 inch iron rod found for a corner;
THENCE N 00°01'52" E a distance of 338.78 feet to a 1/2 inch iron rod found for a corner on the south line of Traders Road;
THENCE S 87°16'07" E along the north line of said 22.060 acre tract and the south line of Traders Road, a distance of 102.35 feet to a 1/2 inch iron rod found for a corner, said corner being in the beginning of a curve to the left, having a central angle of 03°39'23", a radius of 2545.00 feet with a chord bearing of S 89°05'48" E and a chord distance of 162.38 feet,
THENCE in the Southeasterly direction, along said curve to the left, the north line of said 22.060 acre tract and the south line of Traders Road, an arc length of 162.41 feet to a 1/2 inch iron rod found for a corner;
THENCE N 89°04'34" E along the north line of said 22.060 acre tract and the south line of Traders Road, a distance of 447.36 feet to a 1/2 inch iron rod found for a corner;
THENCE N 89°32'08" E along the north line of said 22.060 acre tract and the south line of Traders Road, a distance of 319.40 feet to a 1/2 inch iron rod found for a corner, said corner being in the beginning of a curve to the left, having a central angle of 05°15'59", a radius of 645.00 feet with a chord bearing of N 86°54'08" E and a chord distance of 59.27 feet,
THENCE in the Northeasterly direction, along said curve to the left, the north line of said 22.060 acre tract and the south line of Traders Road, an arc length of 59.29 feet returning to the Point of Beginning and containing 8.357 acres of land.

**NOW THEREFORE, KNOW ALL MEN BY THESE PRESENTS:**

THAT, GREENVILLE CONSTRUCTION, LLC, does hereby adopt this plat as the SCOTT ELLIS HOMESTEAD and dedicates to the public use for the streets and easements shown hereon (if any) for the mutual use and accommodation of any public utility desiring to use or using same for the purpose of construction, maintaining, adding to or removing any or all of their respective systems located therein, and further, that the Owner(s) do hereby acknowledge the requirements of completion of all water and sewage collection systems (if any) and all streets, curbs and gutter and drainage improvements (if any) at the expense of the Owner(s) and guarantee(s) the performance of same.

WITNESS MY HAND this the 7th day of October, 2021.

Owner

STATE OF TEXAS:
COUNTY OF _____

BEFORE ME, the undersigned authority, a Notary Public in and for Hunt County, Texas, on this day personally appeared the person(s) whose name(s) is (are) subscribed to the foregoing instrument and they acknowledge same for the purposes and considerations therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 7 day of October, 2021.

Notary Public in and for Hunt County, Texas

# SCOTT ELLIS HOMESTEAD

## CITY OF GREENVILLE
## HUNT COUNTY, TEXAS
## 8.357 ACRE
## AUGUST, 2021

Owner:
Greenville Construction, LLC
200 Traders Rd
Greenville, Tx. 75402

Surveyor:
Owens Land Surveying
P.O. Box 1025
2616 Stonewall Street
Greenville, Tx. 75403
(903) 450-9837

## 8.357 TOTAL ACRES

### SURVEYOR'S CERTIFICATE

I, Donald S. Holder, Registered Professional Land Surveyor, State of Texas, hereby certify that the description and plat hereon are taken from actual measurements upon the ground and are true and correct to the best of my knowledge and belief this the 29 day of Sept ____ that the monuments shown thereon have been found or set under my supervision and their location and all material description are correctly shown.

Donald S. Holder
R.P.L.S. No. 5266

DONALD S. HOLDER
5266

### APPROVAL CERTIFICATE

Approved this the 7th day of Oct ____, 2021 by the Director of Public Works for the City of Greenville, Texas.

Director of Public Works

Approved this the 7th day of Sept ____, 2021 by the Director of Community Development for the City of Greenville, Texas.

Director of Community Development

### NOTES:
1. Bearings are based on WGS84.
2. According to the Flood Insurance Rate Map No. 48231C0380G dated January 6, 2012, published by the Federal Emergency Management Agency, the subject property lies within Flood Zone "X" and is not shown to be within a special flood hazard area. This statement does not imply that the property and/or structures thereon will be free from flooding or flood damage. On rare occasions, greater floods can and will occur and flood heights may be increased by man-made or natural causes. This flood statement shall not create liability on the part of the surveyor.

THE STATE OF TEXAS
COUNTY OF HUNT
I hereby certify that this instrument was FILED on the date and the time stamped hereon by me and was duly RECORDED in the Records of HUNT County, Texas.

2021-22425 PLAT
10/12/2021 02:43 PM

Becky Landrum, County Clerk
Hunt County, Texas

## VICINITY MAP

TRADERS ROAD  SITE
JACK FINNEY BLVD.
CEDAR CREEK DR.
FRANK ST.

N

SCALE: 1" = 100'

LEGEND

| | | | |
|---|---|---|---|
| ⌐ POWER POLE | ⊗ WATER VALVE | ◌ MAILBOX | ↑ UNDERGROUND CABLE MARKER |
| ⊙ WATER METER | ✦ FIRE HYDRANT | ⊕ CLEAN OUT | |
| ☐ GAS METER | ▣ ELECTRIC METER | △ TELEPHONE PEDESTAL | |

—\—\— WOOD FENCE
—×—×— BARBED WIRE FENCE
—○—○— CHAINLINK FENCE

**Owens Land Surveying**
www.owenslandsurveying.com   (903) 450-9837 / (903) 450-9875

FIRM REG. CERT. #10022400
P.O. BOX 1025
GREENVILLE, TX 75403

| DATE: AUG. 19, 2021 | SCALE: 1" = 100' |
|---|---|
| DRAWN BY: B. EBERT | JOB NO.: 2021-544 |

## Plat Drawing

TRADERS ROAD

N 89°04'34" E 447.36'   N 89°32'08" E 319.40'

N: 7,089,401.85
E: 2,706,951.42

L7  C1  1/2" IRF  1/2" IRF
1/2" IRF  FGP  1/2" IRF  10 U.E  1/2" IRF  C2  1/2" IRF
P.O.B.

25' B.L.

LOT 54

LOT 55

LOT 56

LOT 57

LOT 58

LOT 59

**505 Traders Road**

**LOT 1**
**3.834 ACRES**

N 00°01'52" E 338.78'

**501 Traders Road**

**LOT 2**
**4.524 ACRES**

N 01°01'0" W 326.28'

M. McDONALD SURVEY, A - 738

LOT 1
ELLIS HOMESTEAD

1/2" IRF   L2   1/2" IRF
1/2" IRF   L4   1/2" IRF

0.455 ACRE
REGIONAL DETENTION
POND EASEMENT

CEDAR CREEK LANE

10' B.L.   16.30'   1/2" IRF   222.28'   1/2" IRF   10' B.L.   1/2" IRF
1/2" IRF
S 88°59'30" W 392.66'   S 88°58'59" W 238.58'   S 89°22'32" W 377.80'

LOT 61  LOT 62  LOT 63  LOT 64  LOT 65  LOT 66  LOT 67  LOT 68  LOT 69  LOT 70  LOT 16  LOT 17  LOT 18  LOT 19  LOT 20  LOT 21  LOT 22  LOT 23  LOT 24  LOT 25  LOT 26  LOT 27  LOT 28  LOT 29  LOT 30

ELLIS FARM ADDITION
PHASE I
SECTION A

N: 7,089,080.13
E: 2,708,062.31

| CURVE | RADIUS | ARC LENGTH | CHORD LENGTH | CHORD BEARING | DELTA ANGLE |
|---|---|---|---|---|---|
| C1 | 2545.00 | 162.41 | 162.38 | S 89°05'48" E | 3°39'23" |
| C2 | 645.00 | 59.29 | 59.27 | N 86°54'08" E | 5°15'59" |

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | S 06°31'16" E | 202.96' |
| L2 | S 89°37'51" E | 173.64' |
| L3 | S 01°45'18" E | 12.60' |
| L4 | S 89°22'32" W | 180.04' |
| L5 | S 01°45'18" E | 110.02' |
| L6 | S 88°59'29" W | 102.17' |
| L7 | S 87°16'07" E | 102.35' |

I 521

THE STATE OF TEXAS

COUNTY OF HUNT

I hereby certify that this instrument was FILED on the
date and the time stamped hereon by me and was duly
RECORDED in the Records of HUNT County, Texas.

**2023-14209    DT**
07/28/2023 09:23 AM

Becky Landrum, County Clerk
Hunt County, TX